825 P.2d 944

**Doris ORMSBEE, a single woman,**
**Plaintiff/Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,**
**a foreign insurance corporation,**
**Defendant/Appellee.**

**No. 2 CA–CV 91–0051.**

Court of Appeals of Arizona,
Division 2, Department B.

June 27, 1991.
Review Granted March 19, 1992.

Tully & Wezelman, P.C. by John L. Tully,
Tucson, for plaintiff, appellant.

Snell & Wilmer by David A. Paige and Laura V. Ridenour, Tucson, for defendant, appellee.

## OPINION

HOWARD, Presiding Judge.

The issue in this case is the one left undecided in *St. Paul Fire & Marine Insurance Co. v. Gilmore*, 168 Ariz. 159, 812 P.2d 977, (1991), is an umbrella policy exempt from the requirements of A.R.S. § 20–259.01, the Uninsured Motorist Act? We hold that it is and affirm the trial court's granting of summary judgment in favor of appellee.

In 1983, an Allstate agent reviewed Doris Ormsbee's insurance file. He noted that she had an Allstate automobile policy with liability limits of $100,000/$300,000 and underinsured motorist limits of $100,000/$300,000. The agent recommended that she purchase a personal umbrella policy (PUP) in the amount of $1,000,000, which she did. In offering the umbrella policy Allstate never offered to sell her either uninsured motorist (UM) coverage or underinsured motorist (UIM) coverage.

Nowhere in the liability section of the policy is UM or UIM coverage mentioned. The PUP states in pertinent part:

This policy provides only excess insurance. *It does not contribute with any Required Underlying Insurance* or other insurance which applies to an occurrence. It also is excess to any Retained Limit an insured assumes.

(Emphasis added.) The PUP coverage does include coverage for an occurrence arising out of the occupancy of a land vehicle. Furthermore the policy requires the insured to maintain liability coverage in the amount of $100,000/$300,000 in connection with the ownership, maintenance or use of any land motor vehicle.[1]

At all material times after 1983, Ormsbee kept both her Allstate primary liability insurance policy and her Allstate umbrella policy in effect. In 1987, Ormsbee was injured in a two-car accident while riding as a passenger in a car that was owned and operated by her grandson. Lyle Jaress, the driver of the other car, failed to yield at a stop sign and his car collided with the vehicle in which she was riding. As a result she sustained severe personal injuries.

With regard to this accident, Jaress was an underinsured motorist. He had only $100,000 in liability coverage available under his own policy which has been paid to Ormsbee. She also received $100,000 in underinsured motorist benefits under her own primary Allstate policy and $25,000 under the UIM provision of her grandson's policy. The parties stipulated that the sum of such payments is insufficient to compensate her for damages resulting from this accident. She claims that the failure of Allstate to offer her UIM coverage violates A.R.S. § 20–259.01 and that she, therefore, is entitled to UIM coverage under the umbrella policy in the sum of $1,000,000.

Although *Gilmore* did not involve an umbrella policy, the court made several helpful observations which point to the conclusion which we have reached here. The court in *Gilmore* first pointed out that although the parties in the court of appeals discussed at some length the applicability of Arizona's laws to umbrella or excess insurance policies, such a discussion was irrelevant because the policy in *Gilmore* was not a true umbrella or excess policy. The court noted that umbrella coverage applies when the same insured has purchased underlying coverage for the same risk. The umbrella policy provides, for a modest premium, coverage against catastrophic losses that exceed the limits of the underlying coverage. Here, Ormsbee's premium was $145 per year. As noted by the court in *Gilmore:*

This excess insurance comes into play only after the limits of the same in-

---

1. The policy also provides excess liability insurance arising from the ownership, maintenance and use of aircraft and the ownership, maintenance or use of a residence or farm. It also applies to personal activities of an insured not related to any business or business property of an insured, to civic service the insured performs not for profit, but does not cover the occupancy of a land vehicle, aircraft or watercraft related to the insured's business or business property.

sured's primary coverage have been exhausted. [Citation omitted.] With this type of coverage, the limits of the underlying policy operate as a kind of deductible, and "an insured pays a reduced premium to the excess carrier expressly because that carrier will be obligated to pay a claim only after a certain amount has been paid" by the insured's primary insurer.

168 Ariz. at 162, 812 P.2d at 980, quoting *Maricopa County v. Federal Insurance Co.*, 157 Ariz. 308, 310, 757 P.2d 112, 114 (App.1988).

The policy in *Gilmore* was not an umbrella policy because it provided the only automobile insurance for the party whose coverage was at issue. Here, the parties do not dispute that the policy issued by Allstate was a true umbrella policy.

In *Gilmore* our supreme court agreed with the following comments by Professor Appleman on whether the uninsured motorist statutes should apply to an umbrella policy.

> Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. Assuming one's automobile and homeowner's policies have liability limits of $100,000 or even $500,000, the umbrella policy may pick up at that point and cover for an additional million, five million, or ten million. It may assume as a primary carrier certain coverages not included elsewhere, such as invasion of privacy, false arrest etc., but there is no intention to supplant the basic carriers on the homeowners or automobile coverages. Therefore, these should not even enter into our current consideration.

8C J. Appleman, *Insurance Law and Practice* § 5071.65 at 107 (1981).

Professor Appleman also stated that because of the courts' misunderstandings as to the nature of the umbrella policy, such policies have been held to fall within the definition of automobile liability insurance.

Professor Appleman criticizes such a result stating:

> It should be recognized that the generosity of the courts confers no favor upon the insuring public. Such decisions result either in such coverage being withdrawn from potential insureds or in premium rates being raised so substantially that they will become priced out of the range of most buyers. For every such extension there is a price to be paid.

Id. at 108.

Turning back to *Gilmore*, the court stated the following in its conclusion:

> We hold, therefore, that, with the possible exception of umbrella (true excess) policies which we do not consider today, a policy that provides automobile liability insurance is an "automobile liability or motor vehicle liability" policy within the meaning of A.R.S. § 20–259.01(A), (B), and (C).

168 Ariz. at 167, 812 P.2d at 985. We agree with Professor Appleman and the states which hold that a true umbrella policy is exempt from the provisions of the Uninsured Motorist Act. See *Moser v. Liberty Mutual Insurance Co.*, 731 P.2d 406 (Okl.1986); see also, *O'Hanlon v. Hartford Accident and Indemnity Company*, 639 F.2d 1019 (3rd Cir.1981). We note and agree with the reasoning of the Florida district court of appeal in *Continental Insurance Company v. Howe*, 488 So.2d 917, 919 (Fla.App.1986):

> The rationale for opting umbrella policies out of uninsured motorist coverage is that the statute is intended to protect injured motorists by insuring that they will be able to recover an amount equivalent to what would have been available if they had been injured by a driver who maintained the minimum statutory coverage. The injured motorist is already protected by, and will be able to recover the minimum statutory limits from, the primary policy. An umbrella policy is supplementary insurance. Public policy is not furthered by requiring an umbrella policy insurer to provide uninsured [underinsured] motorist coverage.

Affirmed.

CARRUTH* and LACAGNINA, JJ., concur.