859 P.2d 732

**Doris ORMSBEE, Plaintiff/Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant/Appellee.**

No. CV–91–0324–PR.

Supreme Court of Arizona, En Banc.

Sept. 23, 1993.

Reconsideration Denied Nov. 30, 1993.

**110**

Tully & Wezelman by John L. Tully, Tucson, for Doris Ormsbee.

Snell & Wilmer by David A. Paige and Laura V. Ridenour, Tucson, for Allstate Ins. Co.

## OPINION

MARTONE, Justice.

We are asked to decide whether an excess liability insurance policy covering automobiles and motor vehicles, also known as an umbrella policy, is an automobile or motor vehicle liability policy within the meaning of the Uninsured Motorist Act, A.R.S. § 20–259.01. We hold that it is.

### I. *BACKGROUND*

Doris Ormsbee was severely injured in an automobile accident. She recovered $100,000, the liability limit, from the insurer of the person at fault. She recovered $25,000, the underinsured limit, from the insurer of the driver of the vehicle in which she was a passenger. She recovered $100,-000, the underinsured limit of her own automobile insurance policy, from Allstate. It is undisputed that her damages greatly exceed these amounts. She sought additional underinsured coverage for the balance of her injuries under her Allstate excess or umbrella insurance policy. Allstate declined and argued that the umbrella policy only covered liability for damages caused others, and not damages caused to the insured by underinsured motorists. Ormsbee brought a declaratory action in the superior court arguing that her umbrella policy is an automobile liability policy within the meaning of A.R.S. § 20–259.01, and, therefore, Allstate had an obligation to either offer underinsured motorist coverage in connection with this policy, or be liable for it. The trial judge granted summary judgment in favor of Allstate and the court of appeals affirmed. *Ormsbee v. Allstate Ins. Co.*, 170 Ariz. 419, 825 P.2d 944 (App.1991). We granted Ormsbee's petition for review because of the statewide importance of the issue presented, and because the issue was left undecided in *St. Paul Fire & Marine Ins. v. Gilmore*, 168 Ariz. 159, 812 P.2d 977 (1991).

### II. *ANALYSIS*

A.R.S. § 20–259.01 requires insurers who write automobile liability or motor vehicle liability policies to provide mandatory minimum uninsured motorist coverage, subsection (A), to offer further uninsured motorist coverage in limits not less than the liability limits contained within the policy, subsection (B), and to offer underinsured motorist coverage in limits not less than the liability limits within the policy, subsection (C). This is critically important coverage for persons who care as much about themselves and their families as they do about strangers. The legislature has said that if an insurer offers to sell liability insurance, it must offer to sell underinsured motorist insurance. There are no exceptions here applicable. See § 20–259.-01(D).

Let us compare the operative words of the statute with the operative words of the excess or umbrella policy at issue. Section 20–259.01 refers to automobile liability or motor vehicle liability policies insuring against loss resulting from liability for bodily injury or death arising out of the ownership, maintenance or use of a motor vehicle. The Allstate umbrella policy provides automobile liability insurance for bodily injury or death arising out of the ownership,

maintenance or use of any land motor vehicle. Thus, if we just look at the words of the policy and compare them to the words of the statute, we can say quite plainly that the policy at issue here is subject to A.R.S. § 20–259.01.[1]

We, therefore, look at Allstate's arguments against the applicability of the statute. Allstate's principal argument is that the terms "automobile liability or motor vehicle liability policy" as used in A.R.S. § 20–259.01 are not as inclusive as they seem to be but, instead, refer only to a primary layer of automobile insurance coverage. We note at the outset that there is nothing on the face of A.R.S. § 20–259.01 that supports this argument. There is no mention of primary coverage. Instead, the statute is absolute and on its face covers all automobile liability policies.

In *Jenkins v. Mayflower Insurance Exchange*, 93 Ariz. 287, 380 P.2d 145 (1963), we refused to allow mere labels used in the insurance trade to interfere with legislative intent. The defendant insurance company in that case attempted to avoid the requirements of A.R.S. § 28–1170 by making technical distinctions among the terms "motor vehicle liability policy," "automobile liability policy," and "policy of insurance" as used in the Uniform Motor Vehicle Safety Responsibility Act, A.R.S. §§ 28–1101 to – 1261. We rejected this and held instead that the omnibus clause required by A.R.S. § 28–1170 is a part of every motor vehicle liability policy by whatever name it may be called. *Id.* at 291, 380 P.2d at 148.

So, too, in *St. Paul Fire & Marine Ins. v. Gilmore*, 168 Ariz. 159, 165, 812 P.2d 977, 983 (1991), we said that under our statutes "the type of policy is determined by the type of coverage provided, not by the label affixed by the insurer." (Footnote omitted.) We, therefore, rejected the argument that the policy in question could. not be an "automobile liability or motor vehicle liability policy" within the meaning of the Uninsured Motorist Act simply because it was labeled a "comprehensive general liability policy." *Id.* We held that:

> with the possible exception of umbrella (true excess) policies which we do not consider today, a policy that provides automobile liability insurance is an "automobile liability or motor vehicle liability" policy within the meaning of A.R.S. § 20–259.01(A), (B), and (C).

*Id.* at 167, 812 P.2d at 985 (footnote omitted).

In deciding that a comprehensive general liability policy was a policy within the meaning of § 20–259.01, we distinguished two senses in which insurance could be categorized as "excess." We described an umbrella policy, such as the one at issue here, as one in which the same insured has purchased underlying coverage for the same risk. *Id.* at 162, 812 P.2d at 980. We acknowledged a split of authority on the applicability of uninsured/underinsured motorist statutes to policies of this sort. We then described another sense in which a policy might be "excess" as one in which other insureds have purchased insurance that may be applicable to the same risk. *Id.* at 163, 812 P.2d at 981. We categorized the comprehensive general liability policy as excess in this sense. We thus had no occasion to examine the split over umbrella policies. We must now reach the issue and, therefore, turn to those cases deemed irrelevant in *Gilmore*. Before we do so, we note that in *Gilmore* we said that, in determining whether the insurer was required to offer uninsured/underinsured motorist coverage, it was irrelevant that some other insurance might be available or *primary* in a particular accident. We noted that the whole point of uninsured motorist coverage and underinsured motorist coverage is that other insurance might not be available or, if available, might not be adequate. *Id.* At this point, therefore, it seems both the statute and the reasoning in *Gilmore* support the proposition that the Uninsured Motorist Act applies to an um-

---

1. Although the Uninsured Motorist Act, A.R.S. § 20–259.01, does not exempt excess coverages, such as umbrella policies, from its terms, we note that A.R.S. § 28–1170(G) does exempt excess or additional coverages from the mandatory requirements of the Safety Responsibility Act.

brella policy. Let us then turn to the cases we avoided in *Gilmore*.

In *Gilmore*, we acknowledged "a split of authority among courts considering the issue." *Id.* at 162, 812 P.2d at 980. A review of these cases indicates that the split is based upon distinctly different statutes and distinctly different legislative policies. States with statutes requiring uninsured/underinsured motorist coverage in limits equal to those of liability coverage, and with courts willing to give their statutes their plain meaning, have held that such statutes apply to umbrella policies. *Chicago Ins. Co. v. Dominguez*, 420 So.2d 882 (Fla.App.1982); *Bartee v. RTC Transp., Inc.*, 245 Kan. 499, 781 P.2d 1084 (1989); *Southern Am. Ins. v. Dobson*, 441 So.2d 1185 (La.1983) (on rehearing); *House v. State Auto. Mut. Ins. Co.*, 44 Ohio App.3d 12, 540 N.E.2d 738 (1988); and, *Cincinnati Insurance Co. v. Siemens*, 16 Ohio App.3d 129, 474 N.E.2d 655 (1984). Because the statute links the amount of uninsured/underinsured coverage to the amount of liability coverage, it makes sense that, as the latter increases, as through umbrella policies, the former must also increase.

In contrast, states in which the legislature requires insurers to write uninsured/underinsured motorist coverage only to the statutory minimum of liability coverage, or in which the courts tie the term "automobile policy" to their financial responsibility laws, have held that such statutes do not apply to umbrella policies. *Continental Ins. Co. v. Howe*, 488 So.2d 917 (Fla.App.1986) (construing Rhode Island law); *Moser v. Liberty Mutual Ins. Co.*, 731 P.2d 406 (Okla.1986). This also makes sense. If uninsured/underinsured coverage is only required in a minimum amount, that minimum is met, and the insurer is not required to offer limits up to liability limits, the amount of liability coverage is irrelevant.

Our statute requires an insurer to do more than write uninsured motorist coverage to the minimum liability limits. It expressly requires an insurer to offer in writing to sell both uninsured and underinsured motorist coverage "in limits not less than the liability limits for bodily injury or death contained within the policy." A.R.S. § 20–259.01(B) and (C).

Moreover, *Gilmore* has already aligned us with states that do *not* tie the term "automobile policy," as used in the Uninsured Motorist Act, to motor vehicle policies issued under the Uniform Safety Responsibility Act. 168 Ariz. at 163–67, 812 P.2d at 981–85. Our statutes, therefore, work more like those in the states that include umbrella policies within their uninsured/underinsured motorist acts than in those states that have held otherwise.

So, too, the legislative policy in Arizona is clear. As we noted in *Gilmore*, 168 Ariz. at 165, 812 P.2d at 983, the purpose of the Uninsured Motorist Act in Arizona is to guarantee that responsible drivers will have an opportunity to protect themselves and their loved ones as they would others. "The offer of UIM coverage mandated by A.R.S. § 20–259.01(C) was intended to implement this protection." *Id.* at 165–166, 812 P.2d at 983–84. It is undisputed here that Allstate was unwilling to offer Ormsbee underinsured motorist coverage "in limits not less than [her] liability limits." Instead, Allstate told Ormsbee that it would only provide additional liability coverage and only under an umbrella policy. But the statute makes no exception for this way of selling liability coverage without also selling underinsured motorist coverage. Labeling the policy umbrella or excess does not change the result. Neither our cases nor § 20–259.01 use the term "primary" or distinguish among automobile policies on this basis.

The legislature has acknowledged a very real problem in Arizona. With the presence of so many uninsured or underinsured drivers, the only practical way responsible people can protect themselves from these persons is to have the opportunity to buy uninsured or underinsured motorist coverage. Umbrellas are sold as supplements to underlying policies—as even cheaper alternatives with higher limits. Yet, the consumer may forego, or, as here, be forced to forego, uninsured and underinsured motor-

ist coverage if Allstate's position is adopted. Mrs. Ormsbee asked for the most she could buy, but Allstate would not sell her an underlying policy—it would only offer her an umbrella, thus depriving her of protection for herself. The statute is designed to prevent this. An insurer should not be allowed to circumvent the protection afforded by the Uninsured Motorist Act by offering to sell minimum primary coverage and maximum umbrella coverage.

## III. *RESOLUTION AND DISPOSITION*

We hold that an umbrella policy that provides automobile liability insurance is an "automobile liability or motor vehicle liability" policy within the meaning of A.R.S. § 20–259.01(A), (B), and (C). Therefore, Allstate was required to offer Ormsbee underinsured motorist coverage. Its failure to do so results in imputation of the coverage to the policy as a matter of law. *Gilmore*, 168 Ariz. at 167, 812 P.2d at 985.

The opinion of the court of appeals is vacated, the judgment below is reversed, and the case is remanded to the superior court for entry of judgment in favor of Ormsbee and against Allstate Insurance Company on Ormsbee's claim for declaratory relief.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.