Sidelnik v. ASIC 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00209-CV







Joel Sidelnik, Individually and as Independent Administrator of 


the Estate of Debra V. Sidelnik, Deceased, Appellant



v.



American States Insurance Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 94-03935, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








 Appellant Joel Sidelnik brought a declaratory judgment action seeking a
determination that, as a matter of law, his umbrella insurance policy issued by appellee American
States Insurance Company provides uninsured motorist coverage for the car accident in which his
wife was killed. The trial court granted summary judgment in favor of appellee. We will affirm
the trial court's judgment.



BACKGROUND


 Appellant's wife, Debra Sidelnik, was killed in a car accident involving Jose Ayala,
an uninsured motorist. The Sidelniks were covered under an automobile liability insurance policy
which provided uninsured/underinsured motorist ("UM") coverage of $50,000 per person and
$100,000 per accident. The Sidelniks received the full $100,000 under the UM coverage portion
of their automobile liability insurance policy.

 The Sidelniks also were covered under an umbrella indemnity insurance policy
which provided one million dollars in coverage and was in force on the date of the accident. 
Appellant sued for declaratory judgment, claiming that the umbrella policy covers the accident in
question. In response, appellee contended that the umbrella policy does not provide any coverage
that would inure to the Sidelniks' benefit. On cross-motions for summary judgment, the trial
court ruled in favor of the appellee.



DISCUSSION 


Ambiguity 

 In points of error one and two, Sidelnik claims that the trial court erred in
concluding that the umbrella policy was unambiguous and did not provide coverage for the
accident in question. He contends that the allegedly ambiguous umbrella policy could be
construed to cover Ayala as an insured party. Thus, appellant argues, appellee is required to
indemnify Ayala to the extent of the umbrella policy limits for the amount of damages he is legally
obligated to pay the Sidelniks. See Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.
1984) (when insurance policy is ambiguous, the courts shall adopt construction favoring
coverage); Glover v. National Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977). 

 Insurance policies are controlled by rules of interpretation and construction
applicable to contracts generally. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex.
1994); Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 665 (Tex. 1987). The primary concern
of a court in construing a written contract is to ascertain the true intent of the parties as expressed
in the instrument. Forbau, 876 S.W.2d at 133. If a written contract is so worded that it can be
given a definite or certain legal meaning, then it is not ambiguous. Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983); Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex.
1951). Parol evidence is not admissible for the purpose of creating an ambiguity. Universal, 243
S.W.2d at 157; Lewis v. East Texas Fin. Co., 146 S.W.2d 977, 980 (Tex. 1941). 

 If, however, the language of a policy or contract is subject to two or more
reasonable interpretations, it is said to be ambiguous. Glover, 545 S.W.2d at 761; Coker, 650
S.W.2d at 393; Universal, 243 S.W.2d at 157. Whether a contract is ambiguous is a question of
law for the court to decide by looking at the contract as a whole in light of the circumstances
present at the time the contract was executed. See Coker, 650 S.W.2d at 394; R & P Enter. v.
LaGuardia, Gaurel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). Only where a contract is
first determined to be ambiguous may the court consider the parties' interpretation, see Sun Oil
Co. (Delaware) v. Madely, 626 S.W.2d 726, 732 (Tex. 1981), and admit extraneous evidence to
determine the true meaning of the instrument. See id.; R & P Enter., 596 S.W.2d at 519. 

 An ambiguity in a contract may be either "patent" or "latent." A patent ambiguity
is evident on the face of the contract. See Universal Home Builders, Inc. v. Farmer, 375 S.W.2d
737, 742 (Tex. Civ. App.--Tyler 1964, no writ). If a contract which is unambiguous on its face
is applied to the underlying subject matter of the contract and an ambiguity appears by reason of
some collateral matter, the ambiguity is latent. See Murphy v. Dilworth, 151 S.W.2d 1004, 1005
(Tex. 1941); see also Bache Halsey Stuart Shields, Inc. v. Alamo Sav. Ass'n, 611 S.W.2d 706,
708 (Tex. Civ. App.--San Antonio 1980, no writ). In resolving latent ambiguities, parol evidence
is admissible for the purpose of ascertaining the true intent of the parties as expressed in the
agreement. See Murphy, 151 S.W.2d at 1005.

 In the instant cause, the language of the umbrella policy is clear on its face and not
patently ambiguous. (1) Furthermore, applying the policy's language to the facts surrounding this
car accident does not produce an uncertain or ambiguous result. Rather, the language leads to
only one reasonable conclusion: the umbrella policy covers either the named insured or drivers
who operate a car with permission of the named insured. Ayala fits neither of these categories. 
We overrule points of error one and two. 

 In point of error three appellant claims that the trial court erred in failing to
consider extrinsic summary judgment evidence, namely the affidavits of Gary Beck and William
Gammon, as well as filings with the Texas Department of Insurance.

 Because the contract is unambiguous as a matter of law, the trial court could not
have considered any extraneous evidence of the parties' intentions. See R & P Enter., 596
S.W.2d at 518; Birdwell v. Birdwell, 819 S.W.2d 223, 229 (Tex. App.--Fort Worth 1991, writ
denied). Therefore, the court did not err in failing to consider the extraneous evidence. We
overrule point of error three.



Uninsured/Underinsured Motorist Coverage Implied as a Matter of Law

 Appellant claims that Article 5.06-1 of the Texas Insurance Code ("Code")
mandates that the umbrella policy in question include UM coverage as a matter of law. Tex. Ins.
Code. Ann. art. 5.06-1 (West 1981). Article 5.06-1(1) of the Code states in pertinent part:



No automobile liability insurance . . . covering liability arising out of the
ownership, maintenance, or use of any motor vehicle shall be delivered or issued
for delivery in this state unless coverage is also provided therein or supplemental
thereto, in at least the limits described in the Texas Motor Vehicle Safety
Responsibility Act, under provisions prescribed by the Board, for the protection
of persons insured thereunder who are legally entitled to recover damages from
owners or operators of uninsured or underinsured motor vehicles because of bodily
injury, sickness, or disease, including death, or property damage resulting
therefrom.



Id. (emphasis added). (2) Thus, every automobile liability policy must provide UM coverage. We
are called upon to answer whether the mandatory UM coverage required under Article 5.06-1 of
the Code applies to an umbrella indemnity policy designed to provide excess liability coverage to
the insured. 

 By its own terms, the statute applies only to "automobile liability insurance." 
Therefore, as a threshold issue, we must determine whether the umbrella policy issued by appellee
is an "automobile liability insurance" policy as contemplated by the statute. 

 Appellant argues that because the umbrella policy can provide excess liability
coverage arising from an automobile accident, it is an "automobile liability insurance" policy as
contemplated by the statute. Appellee argues that the statute applies only to the primary coverage
of the underlying automobile liability policy. 

 The statute is intended to protect injured motorists by insuring that they will be able
to recover at least an amount equivalent to what would have been available if the insured had been
injured by a driver who maintained the required statutory minimum liability coverage. This
purpose is achieved by requiring that underlying policies provide UM coverage. See e.g., Todd
v. Federated Mut. Ins. Co., 409 S.E.2d 361, 365 (S.C. 1991). 

 Numerous other jurisdictions concur that UM statutes are inapplicable to umbrella
policies. See O'Hanlin v. Hartford Accident & Indemnity Co., 639 F.2d 1019 (3d. Cir. 1981)
(construing Delaware law); Trinity Universal Ins. Co. v. Metzger, 360 So.2d 960 (Ala. 1978); 
Matarasso v. Continental Casualty Co., 440 N.Y.S.2d 40 (1981), aff'd, 436 N.E.2d 1305 (1982); 
Hartbarger v. Country Mut. Ins. Co., 437 N.E.2d 691 (Ill. 1982); Moser v. Liberty Mut. Ins. Co.,
731 P.2d 406 (Okl. 1986); Continental Ins. Co. v. Howe, 488 So.2d 917 (Fla. DCA 3d 1986)
(construing Rhode Island law); United Services Automobile Assn. v. Wilkinson, 569 A.2d 749
(N.H. 1989); Mass v. U.S. Fidelity and Guar. Co., 610 A.2d 1185 (Conn. 1992); but see
Ormsbee v. Allstate Ins. Co., 859 P.2d 732 (Ariz. 1993) (holding that an umbrella policy is an
automobile liability policy for purposes of Arizona UM statute). These cases all focus on the
inherent differences between primary liability and umbrella policies. 

 Commenting on the purpose of umbrella policies, the Alabama Supreme Court has
stated:



[Automobile liability insurance] policies insure against the risk of loss through the
operation of specific automobiles. An umbrella policy, on the other hand, is
fundamentally excess insurance designed to protect against catastrophic loss. 
Before an umbrella policy is issued, a primary policy (the `underlying policy')
must be in existence and this primary policy must by law provide uninsured
motorist coverage. The umbrella policy assumes a risk of much less frequent
occurrence, i.e. the risk of judgments in excess of primary policy limits, and
accordingly carries premiums which reflect the lesser magnitude of this risk. The
umbrella policy issued by [the insurance company] is an inherently different type
of insurance from an automobile or motor vehicle liability policy, and consequently
does not come within the scope of the uninsured motorist statute.



Trinity Universal Ins. Co. v. Metzger, 360 So.2d 960, 962 (Ala. 1978).

 While construing a UM statute similar to that of Texas, the South Carolina Supreme
Court has stated, "an umbrella policy is designed as supplementary insurance and would not exist
but for the underlying primary policy. The underlying primary policy provides the insured with
all the benefits accorded under [the] uninsured motorist statute." Todd, 409 S.E.2d at 366. 

 In discussing the interplay between UM coverage and umbrella policies, one
leading commentator has stated: 



Umbrella policies serve an important function in the industry. In this day of
uncommon, but possible, enormous verdicts, they pick up this exceptional hazard
at a small premium. Assuming one's automobile and homeowner's policies have
liability limits of $100,000 or even $500,000, the umbrella policy may pick up at
that point and cover for an additional million, five million, or ten million. It may
assume as a primary carrier certain coverages not included elsewhere . . ., but
there is no intention to supplant the basic carriers on the homeowners or
automobile coverages. . .  However, because of the misunderstanding of [some]
courts as to the nature of such coverages, they have been held to fall within the
definition of automobile liability insurance.



8C J.A. Appleman & J. Appleman, Insurance law and Practice § 5071.65 (1981) (emphasis
added).

 We are persuaded that umbrella policies providing excess liability coverage serve
a purpose distinct from that served by policies that exclusively cover liability from damages
arising from the ownership, maintenance, or use of an automobile. While the Sidelniks' umbrella
policy provides excess coverage for liability arising from an automobile accident, this fact does
not convert it into an "automobile liability insurance" policy within the meaning of Article 5.06-1. 

 In arguing that the umbrella policy in question includes UM coverage as a matter
of law, appellant principally relies on Ormsbee v. Allstate Ins. Co., 859 P.2d 732 (Ariz. 1993). 
In Ormsbee, the Arizona Supreme Court stated:



States with statutes requiring uninsured/underinsured motorist coverage in limits
equal to those of liability coverage, and with courts willing to give their statutes
plain meaning, have held that such statutes apply to umbrella policies. Because the
statute links the amount of uninsured/underinsured coverage to the amount of
liability coverage, it makes sense that, as the latter increases, as through umbrella
policies, the former must also increase. In contrast, states in which the legislature
requires insurers to write uninsured/underinsured motorist coverage only to the
statutory minimum of liability coverage, or in which the courts tie the term
`automobile policy' to their financial responsibility laws, have held that such
statutes do not apply to umbrella policies. This also makes sense. If
uninsured/underinsured coverage is only required in a minimum amount, that
minimum is met, and the insured is not required to offer limits up to liability
limits[;] the amount of liability coverage is irrelevant.



Id. at 735 (citations omitted) (emphasis added). Under the reasoning in Ormsbee, the proper
inquiry is whether the relevant statute requires UM coverage at some minimum amount or in an
amount equal to liability coverage. When the statute requires UM coverage only in the amount
of a statutory minimum of liability coverage, the umbrella policy does not provide additional
coverage; instead, the minimum UM coverage in the underlying policy is deemed to provide
sufficient protection.

 The Texas statute requires uninsured/underinsured coverage only to the minimum
amount of liability coverage prescribed by the Texas Motor Vehicle Safety Responsibility Act. 
See Tex Ins. Code Ann. art. 5.06-1(1),(3) (West 1981); Tex. Transp. Code Ann. § 601.072 (West
1996). As such, even according to Ormsbee, the statute does not also mandate that the umbrella
policy provide additional UM coverage.

 We hold that Article 5.06-1 of the Code does not mandate that the umbrella policy
provide UM coverage. Rather, the underlying automobile liability policy provides UM coverage
sufficient to fulfill the statutory scheme and the public policy of this state. Indeed, in the instant
case the parties concede that appellant received $100,000 in UM coverage from the underlying
automobile liability policy. For the foregoing reasons, we overrule point of error number four.


CONCLUSION


 Having overruled all of appellant's points of error, we affirm the trial court's
judgment.

 


 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: January 17, 1996

Publish
1.   The policy reads in pertinent part:


The unqualified word "insured" includes the named insured and also:


A. any person while using an automobile, recreational vehicle, watercraft, or
aircraft owned by, loaned to or hired for use in behalf of the named insured and
any person or organization legally responsible for the use thereof if the actual use
is by the named insured or with the permission of the named insured, provided
his actual operation or (if he is not operating) his other actual use thereof is
within the scope of such permission; provided, the insurance as respects any
person or organization other than the named insured does not apply:


 (1) as respects any automobile (other than a temporary substitute automobile),
watercraft, or aircraft hired by or loaned to the insured, to the owner or a lessee
thereof other than the named insured, or to any agent or employee of such owner
or lessee. (This sub-paragraph does not apply to a relative as respects a non-owned automobile);


 (2) to any person or organization, or to any agent or employee thereof,
operating an automobile sales agency, repair shop, service station, storage garage
or public parking place, as respects any occurrence arising out of the operation
thereof; 
2.   The Texas uninsured/underinsured motorist statute requires the insured to receive UM
coverage in the amount of the statutory minimum as prescribed by the Texas Motor Vehicle
Safety Responsibility Act. See Tex. Ins. Code Ann. art. 5.06-1(1),(3) (West 1981); Tex.
Transp. Code Ann. § 601.072 (West 1996). The automobile liability insurance policy may
offer greater UM coverage, but in no event may UM coverage exceed the coverage provided
in the liability policy. See Tex. Ins. Code Ann. art. 5.06-1(3) (West 1981).



d/underinsured coverage is only required in a minimum amount, that
minimum is met, and the insured is not required to offer limits up to liability
limits[;] the amount of liability coverage is irrelevant.



Id. at 735 (citations omitted) (emphasis added). Under the reasoning in Ormsbee, the proper
inquiry is whether the relevant statute requires UM coverage at some minimum amount or in an
amount equal to liability coverage. When the statute requires UM coverage only in the amount
of a statutory minimum of liability coverage, the umbrella policy does not provide additional
coverage; instead, the minimum UM coverage in the underlying policy is deemed to provide
sufficient protection.

 The Texas statute requires uninsured/underinsured coverage only to the minimum
amount of liability coverage prescribed by the Texas Motor Vehicle Safety Responsibility Act. 
See Tex Ins. Code Ann. art. 5.06-1(1),(3) (West 1981); Tex. Transp. Code Ann. § 601.072 (West
1996). As such, even according to Ormsbee, the statute does not also mandate that the umbrella
policy provide additional UM coverage.

 We hold that Article 5.06-1 of the Code does not mandate that the umbrella policy
provide UM coverage. Rather, the underlying automobile liability policy provides UM coverage
sufficient to fulfill the statutory scheme and the public policy of this state. Indeed, in the instant
case the parties concede that appellant received $100,000 in UM coverage from the underlying
automobile liability policy. For the foregoing reasons, we overrule point of error number four.


CONCLUSION


 Having overruled all of appellant's points of error, we affirm the trial court's
judgment.