**PARTON, et al.**

v.

**STATE FARM GEN. INS. CO.**

**No. 2:00–CV–236–DF.**

United States District Court,
E.D. Texas,
Marshall Division.

June 7, 2002.

gore, TX, for David Kory Parton, as Representative of the Estate of Leslee Parton.

Robert Scott Davis, Christi Johnson Kennedy, Flowers Davis, LLP, Tyler, TX, Reuben Houston Wallace, Jr., Shannon, Gracey, Ratliff & Miller, Fort Worth, TX, Michael W. Minton, Minton & Milner, PLLC, Dallas, TX, for State Farm General Insurance Co.

## MEMORANDUM ORDER

FOLSOM, District Judge.

Plaintiff and Defendant have filed cross motions for summary judgment. The Court held a hearing October 16, 2001 to consider the parties' arguments. At issue is the construction of the mobile home owner's insurance policy (the Policy) covering Plaintiff's mobile home. Plaintiff contends that because the Policy insures the Partons against liability arising from the operation of specified classes of automobiles and other motor vehicles, it must include the standard uninsured/under insured motorist (UM/UIM) and personal injury (PIP) liability protections, absent a signed written rejection, mandated by Texas law. Defendant argues that the Policy, like a homeowner's policy, provides incidental liability coverage for certain motorized vehicles and was never intended to be an "automobile liability insurance" policy, thus avoiding any automatic liability protections mandated by Texas law. The parties agreed to submit the issue for determination by the Court on stipulated facts and cross motions for summary judgment. For the following reasons, the Court Orders that Defendant's Motion for Summary Judgment (Dkt. No. 23) is GRANTED.

James Andrew Holmes, Wellborn, Houston, Adkison, Mann, Sadler & Hill, Henderson, TX, Robert Stephen Woodfin, Law Office of R. Stephen Woodfin, Kil-

## I

### Facts

On August 29, 2000, Leslie Parton lost her life in an automobile accident with

Johnathan Lacy, an underinsured at fault driver. The car that Ms. Parton was driving was insured by Defendant, who paid out monies to Plaintiff and the deceased's parents under the applicable UIM and PIP protection portions of the Parton's automobile policy. As the insurer of the underinsured at fault driver, Defendant also paid Plaintiff and the deceased's parents under that driver's liability policy. These payments are not at issue in the instant case.

The Partons also carry a mobile home owner's policy (the Policy) with Defendant. The Policy includes comprehensive personal liability coverage in the amount of $100,000. That Policy is the subject of the current lawsuit.

Plaintiff argues that the Court should find that the Policy is an "automobile liability insurance policy" as that term is defined in Article 5.01(3) of the Texas Insurance Code and thus subject to the requirements of Articles 5.06–1 and 5.06–3 of the Texas Insurance Code mandating that UM/UIM and PIP motorist coverage be offered to an insured. Plaintiff further argues that in the instant case, UM/UIM and PIP were neither offered nor rejected as required by Articles 5.06–1 and 5.06–3 of the Texas Insurance Code and that the Policy must therefore include UM/UIM and PIP coverage as a matter of law.

Defendant argues that it was not required by the Texas Insurance Code to offer UM/UIM or PIP coverage in the Policy because that policy, like a homeowner's policy, only provides incidental liability coverage for certain motorized vehicles and was never intended to be an "automobile liability insurance" policy.

## II

### Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sreeram v. Louisiana State Univ. Med. Center–Shreveport*, 188 F.3d 314, 318 (5th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The district court should construe factual disputes "in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *See Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir.1998). In this case, the parties have proffered stipulations of fact to the Court and asked the Court to decide the question before it as a matter of law.

## III

### Texas Insurance Code Provisions

The relevant sections of the Texas Insurance Code read as follows:

5.06–1: The Uninsured Motorist Coverage Statute

5.06–1(1) (requires UM/UIM coverage be offered when insuring motor vehicles) No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act), covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in at least the limits described in the Texas Motor Vehicle Safety–Responsibility Act under provisions prescribed by the Board, for the protection of persons insured thereun-

der who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom. The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing....Tex. Ins.Code Art. 5.06–1(1) (West 2000)

5:06–1(3) (requires that PIP be offered when insuring motor vehicles)

The limits of liability for bodily injury, sickness, or disease, including death, shall be offered to the insured in amounts not less than those prescribed in the Texas Motor Vehicle Safety–Responsibility Act and such higher available limits as may be desired by the insured, but not greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy. Tex. Ins.Code Art. 5.06–1(3) (West 2000)

5.06–3 The Personal Injury Protection Statute

No automobile liability insurance policy, including insurance issued pursuant to an assigned risk plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless personal injury protection coverage is provided therein or supplemental thereto. The coverage required by this article shall not be applicable if any insured named in the policy shall reject the coverage in writing. Tex. Ins.Code Art. 5.06–3(a) (West 2000)

5.01(e) The controlling definition of "motor vehicle or automobile insurance"

Motor vehicle or automobile insurance as referred to in this subchapter shall be taken and construed to mean every form of insurance on any automobile or other vehicle hereinafter enumerated and its operating equipment or necessitated by reason of the liability imposed by any automobile, motorcycle, motorbicycle, truck, truck-tractor, tractor, traction engine, or any other self-propelled vehicle, and including also every vehicle, trailer or semi-trailer pulled or towed by a motor vehicle, but excluding every motor vehicle running only upon fixed rails or tracks. Tex. Ins.Code Art. 5.01(e) (West 2000)

## IV

### The Policy

The Parton's mobile home owner's personal liability coverage provides as follows:

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:

a. pay up to our limit of liability for the damages for which the insured is legally liable; and

b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals the limit of liability.

In part, the Policy contains the following exclusion:

Coverage L—Personal Liability and Coverage—Medical Payments to Others do not apply to bodily injury or property damage:

\*     \*     \*     \*     \*     \*

e. arising out of the ownership, maintenance, use, loading, or unloading of:

1. an aircraft

2. a motor vehicle owned or operated by or rented or loaned to any insured; or

3. a watercraft;

   (a) owned by or rented to any insured if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

   (b) owned by or rented to any insured if the watercraft is a sailing vessel, with or without [*sic*] or auxiliary power, twenty-six feet or more in overall length; or

   (c) powered by one or more outboard motors with more than twenty-five total horsepower owned by an insured at the inception of the policy. However, outboard motors of more than twenty-five total horsepower are covered for the policy period if:

      (1) they are acquired by you prior to the policy period; and

      (a) declared by you at policy inception; or

      (b) your intention to insure is reported in writing within forty-five days after newly acquiring the outboard motors.

      (2) They are acquired by you during the policy period.

The Policy includes the following exception to Exclusions d and e:

Exclusion e(3) does not apply while the watercraft is stored and exclusions d and e do not apply to bodily injury to any residence employee arising out of and in the course of the residence employee's employment by an insured.

The Policy defines "motor vehicles" as follows:

"Motor vehicle" means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 5(a) is not a motor vehicle;

c. a motorized golf cart, snow mobile or other motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location. A motorized golf car while used for golfing purposes is not a motor vehicle;

d. any vehicle while being towed by or carried on a vehicle included in 5(a), 5(b), or 5(c).

## V

### Application of Texas Insurance Code to the Policy

The area of dispute is essentially that the Policy defines motor vehicle less broadly than the Texas legislature. Therefore, while the Policy maintains that it does NOT insure motor vehicles, it goes on to insure some vehicles in certain circumstances. (Policy, Definition of Motor Vehicles, a-d.) These vehicles insured under the Policy *do* qualify as motor vehicles under the Texas Statute Art. 5:01(e). Plaintiff thus argues that the Policy insures motor vehicles, and must fall under the mandate set forth in Art. 5.06–1 and 3 that motor vehicle insurance include the opportunity to purchase UM/UIM and PIP coverage. Defendant, on the other hand,

argues that the Policy itself specifically excludes personal liability coverage arising out of the ownership, maintenance, use, loading, or unloading of a motor vehicle owned or operated by the insured, and thus cannot be construed as an automobile insurance policy.

Plaintiff locates several examples in which the Policy extends to cover motor vehicles. First, the Policy provides motor vehicle and automobile liability insurance for damages arising out of bodily injury to a residence employee sustained in the course and scope of his employment by the insured. For brevity's sake, the Court will refer to this coverage as "the babysitter coverage." Plaintiff argues that because the Policy offers coverage for liability arising out of damages related to vehicle operation, it qualifies as an "automobile insurance policy" in terms of Art. 5.06–1 and 3. Second, the Policy provides coverage for many motorized vehicles operated on an insured location, including tractors, lawnmowers, and snow mobiles. The policy also insures golf carts, on or off an insured location, when not used for golfing purposes. For brevity's sake, the Court will refer to this aspect of the policy as, "the golf cart coverage"; it includes all vehicles insured by the Policy, irrespective of their mandates regarding an insured location. As detailed above, Plaintiff argues that the golf cart coverage offered by the Policy moves the Policy into the realm of motor vehicle insurance because in Texas a golf cart is a motor vehicle, under the definition provided by Texas law. (Texas Ins.Code 5.01(e).) The Policy also provides liability coverage for bodily injury or property damage arising from a motorized land vehicle that is in dead storage on the insured's premises, and a boat, camp, home or utility trailer that is not being towed by a motor vehicle. Plaintiff argues that once one offers coverage for a "motor vehicle," one has offered automobile insurance, and

the necessary UM/UIM insurance offer mandate arises.

Defendant argues that offering the coverage detailed above does not transform the Policy into an automobile liability insurance policy as contemplated by Articles 5.06–1 or 5.06–3 of the Insurance Code. Defendant contends that the babysitter coverage indicates only the special status enjoyed by "residence employees," and not any intention that the Policy was meant to provide automobile insurance. Furthermore, Defendant notes that the Policy explicitly states that its coverage of residence employees exists only in excess of the liability coverage offered by the insured's automobile policy, and since the Texas Court of Appeals has determined that "excess" policies are not subject to the UM/UIM and PIP mandate, such mandate should not apply here.

## VI

### Statutory Intent

In *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985), the Texas Supreme Court stated that unless a statute is ambiguous, the courts must follow the clear language of the statute. That court's admonition to, "take statutes as (courts) find them" is oft repeated in Texas jurisprudence. At the same time, Texas courts have repeatedly held that a court may, "look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions" in order to determine the meaning of a statute. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (*citing Sharp v. House of Lloyd, Inc.* 815 S.W.2d 245, 249 (Tex.1991))(considering the nature and object of the act and the consequences of alternate constructions) and *Irving Fireman's Relief and Retirement Fund v. Sears,* 803 S.W.2d

747, 750 (Tex.App.—Dallas 1990—no writ)(considering the language of the statute and the legislative history). Furthermore, interpretations of statutes which would produce "absurd" results are to be avoided. *Sharp,* 815 S.W.2d at 249. It would thus seem that while courts in Texas must take statutes as they find them, they are also permitted a certain investigatory leniency in this "finding" process.

In considering the statutes before the Court in the instant case, the Court follows the factors set forth in *Sharp,* 815 S.W.2d at 249; "In determining the meaning of a statute, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction." *Id.* (citations omitted). These factors were further clarified by the Texas Supreme Court in *Phillips v. Beaber,* 995 S.W.2d 655 (Tex.1999):

> Our objective when construing a statute is to determine and give effect to the Legislature's intent. To ascertain that intent, we look first to the statute's plain language. We must view the statute's terms in context, and give them full effect. Under the Code Construction Act, we may look to the statute's legislative history in gleaning the Legislature's intent. We also bear in mind the circumstances under which the statute was enacted, and the consequences of any particular construction. Further, we presume that the Legislature acted with

knowledge of the common law and court decisions.

*Id.* at 658 (citations omitted).

As concerns the first point, there can be little question that the language of the statutes is unambiguous. Through its broad definition of motor vehicle and wide application of UM/UIM and PIP mandates, the Texas Insurance Code invites Plaintiff's interpretation of the requirement of UM/UIM and PIP coverage for all policies that seek to insure some form of motor vehicle usage, as does the Policy at issue in this case. Indeed, even Defendant does not assail the statute's language, curtailing its attack against the Plaintiff's interpretation of the Texas Insurance Code to judicial precedent and "common sense".[1]

While linguistic ambiguity is the starting place in the Court's inquiry into statutory intent, it is not the end. *Sharp* and its progeny exhort the Court to press onward to the question of legislative history. The Texas Legislature enacted the first mandatory UM statute in 1967. The Legislature stated the intent and purpose of the statute as follows:

> The fact that people of Texas are constantly exposed to financial loss caused by negligent financially irresponsible motorists and the further fact that it is the intent and purpose of this Act to provide a means of protecting the conscientious and thoughtful motorist against such loss.... Act of May 16,

---

**1.** Defendant suggests, without actually making an argument, that the definition of "motor vehicle" in the Texas Motor Vehicle Safety Responsibility Act (TMVSRA) is pertinent to the issue before this Court. "Motor vehicle" is there defined as "a self-propelled vehicle designed for use on a highway, a trailer or semitrailer designed for use with a self-propelled vehicle, or a vehicle propelled by electric power from overhead wires and not operated on rails." The TMVSRA also defines "highway". Defendant seems to make this assertion because the UM statute set the minimum limits of UM/UIM coverage equal to those required by the TMVSRA. Defendant argues that, "the Texas Legislature has clearly set forth a statutory scheme between the TMVSRA and Art. 5.06–1." (Def. Mot. Sum. Jud. at 20.) Whether or not any such "scheme" exists, the Court does not find the TMVSRA definition of motor vehicles controlling in this case.

1967, 60th Leg. R.S. ch. 202, § 3, 1967 Tex. Gen. Laws 448, 449.

Defendant argues, based on the above, that the Legislature never intended to broaden coverage by inserting mandatory UM/UIM or PIP coverage into a homeowner's policy or a mobile home owner's policy.

Plaintiff, on the other hand, contends that Texas sought to create a wide-sweeping law with few limitations. (Pla. Res. to Def. Sum. Judg. at 13.) Plaintiff urges a literal reading of the statutes in order to support this interpretation. Under such a literal reading, Plaintiff argues that the Texas UM/UIM and PIP statutes are not limited to any particular type of policy or class of motor vehicle, and that the Legislature intended that the effect of its legislation be broad. Plaintiff does not, however, point to any positive legislative history that supports its interpretation of the statute beyond the language of the statute itself. Plaintiff notes lacunae instead, pointing to myriad opportunities that the Legislature has had to change the provisions defining motor vehicles as proof of the Legislature's intent that the statute provide the sweeping coverage that it does. (Pla. Mot. Sum. Judg. at 20.) Plaintiff also notes that the Legislature empowered the Texas Department of Insurance to exempt any class of insurance it deemed appropriate from the requirements of Art. 5, including the UM/UIM and PIP statutes, and that no such exemption has ever been made. (Pla. Mot. Sum. Judg. at 17.) Furthermore, Plaintiff calls to the Court's attention an insurance coverage plan issued by the company Progressive in Texas for two four-wheel all terrain vehicles. The Progressive policy made the mandatory offers of UM/UIM coverage in its coverage of the all terrain vehicles. (Pla. Resp.Def.Mot.Sum.Judg.Exh. B.) Plaintiff contends that this example demonstrates that other insurers understand the broad sweep of the UM/UIM insurance policy offer mandate in Texas.

The passages of legislative history brought to the Court's attention by Defendant support Defendant's more narrow statutory construction. On the other hand, volumes of case law instruct the Court that where there is no ambiguity, the Court must read statutes literally. *See RepublicBank Dallas, N.A. v. Interkal, Inc.* 691 S.W.2d 605, 607 (Tex.1985); *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269 (Tex.1995); *Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex.1999); *McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125, 128 (Com.App.1942); *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 44 Tex. S.Ct. J. 779, 2001 WL 578337 (May 31, 2001); *Fleming Foods v. Rylander,* 6 S.W.3d 278, 283–284 (Tex.1999). Plaintiff points to the recent Texas Supreme Court case, *Texas Department of Criminal Justice v. Miller,* 51 S.W.3d 583 (Tex.2001), for the proposition that courts must honor clearly expressed legislative intent. In *Miller,* the Texas court found it necessary to construe the definition of "use" under the Texas Tort Claims Act, since the Legislature had not done so. The court wrote, "We recognize that the distinction we draw is problematic. But we believe that the Legislature drew that line in the Tort Claims Act." *Id.* at 588–589. The Court finds this case non-instructive; in *Miller,* the court of necessity defined an ambiguous term. In the instant case, the Court is asked to consider whether an unambiguous statute really means what Plaintiff reads it to mean.

With all due respect to the Legislature, the question raised by the Defendant in the case before the Court is whether the outcome requested by Plaintiff could really have been the intent of the Legislature. Defendant's argument suggests that perhaps the broad definition provided in Art.

5.01(e) and the application insisted upon by Art. 5.06–1(1) and 5.06–1(3) are neither deliberate nor intentional on the part of the Legislature, and are instead mistakes that have been overlooked for the past 30 years in the absence of any attempt to apply mandatory UM/UIM and PIP coverage to mobile home owner's or homeowner's insurance policies. At such an impasse, the Court considers the final prong suggested by the court in *Sharp:* the absurdity of the consequences that would follow from alternate constructions.

Although Plaintiff insists that it is both of little consequence as well as beyond the scope of this Court's review, the Court finds it imperative, in following Texas law, to consider what a ruling in Plaintiff's favor might presage. Plaintiff argues that the Texas Insurance Code mandates that offers of UM/UIM and PIP insurance be made to an insured under any policy that insures motor vehicles as defined in 5.01(e). Plaintiff contends that Defendant should have extended such a mandatory offer to the Partons because their mobile home owner's policy insured motor vehicles in some circumstances. Plaintiff offers no support for his suggestion that such an interpretation could be applied only to *mobile home owner's* policies; indeed, the argument that mandates UM/UIM and PIP insurance for Plaintiff's mobile home owner's policy is equally valid for homeowner's policies Texas-wide. The question thus comes down to this: did the Texas Legislature intend, in its 1967 and 1973 acts, to mandate an offer of UM/UIM and PIP coverage for *all* homeowner's policies insuring some form of motor vehicles?

The Court cannot conclusively answer the question. However, as Defendant notes, it seems incredible that the Legislature would have desired that UM/UIM and PIP coverage be offered on all homeowner's policies insuring some form of motor vehicles. The Court agrees with De-

fendant that only a "bloodless literalism" would allow the Court to ignore the consequences that would follow a finding such as the one Plaintiff urges.

## VII

### Discussion

Defendant cites three cases in support of its arguments: *Davidson v. Motorists Mt. Ins. Co.,* 91 Ohio St.3d 262, 744 N.E.2d 713 (2001), *Herzog v. National American Ins. Co.,* 2 Cal.3d 192, 84 Cal.Rptr. 705, 465 P.2d 841 (1970), and *Sidelnik v. American States Ins. Co.,* 914 S.W.2d 689 (Tex. App.1996). The Court will address these arguments in turn.

In *Davidson,* the Ohio Supreme Court found that a homeowner's policy was not a motor vehicle liability policy and therefore not subject to the statutory provisions which require UM/UIM coverage whenever an automobile liability or motor vehicle liability policy is issued. The court stated that there is no direct liability coverage for motor vehicles in a homeowner's policy, even in a limited sense, because the policy specifically excludes coverage for bodily injury arising out of the use of motor vehicles. According to the court, while the motor vehicle exclusion does not apply to specific conveyances such as recreational off-road conveyances and golf cars, this incidental coverage is simply not enough to transform a homeowner's policy into an automobile liability policy. *Id.,* 744 N.E.2d at 715, 718.

The *Davidson* case is distinguishable from the case at bar because in *Davidson,* the uninsured motorist statute at issue did not define the terms "motor vehicle" or "motor vehicle liability insurance policy" The *Davidson* Court's decision relied on a previous decision, *Bovi v. Pacific Indemnity Co.,* 85 Ohio St.3d 343, 708 N.E.2d 693 (1999), where the court determined that

the legislature had created an ambiguity in defining "motor vehicle" and "motor vehicle liability insurance policy." The *Bovi* court found that the available legislative history supported the conclusion that the financial responsibility law and the uninsured motorist statute were "related in purpose." *Id.,* 708 N.E.2d at 694–95. Based on these findings, the *Bovi* court grafted the financial responsibility law's definition onto the uninsured motorist statute. It is this grafting that is relied upon in *Davidson.* Thus *Davidson* is distinguishable from the instant case because here the parties have demonstrated no ambiguity in the Legislature's language that would merit the types of findings that were necessitated in *Davidson* and *Bovi.*

Nonetheless, *Davidson* provides the Court with an important benchmark. The *Davidson* Court found that there is no direct liability coverage for motor vehicles in a homeowners policy, even in a limited sense, because the policy specifically excludes coverage for bodily injury arising out of the use of motor vehicles. In the words of the Ohio court, "Common sense alone dictates that neither the insurer nor the insured bargained for or contemplated that such homeowner's insurance would cover personal injuries arising out of an automobile accident that occurred on a highway away from the insured's premises." *Id.* at 719. The Court finds the fact that neither Plaintiff nor Defendant might have imagined that Plaintiff's mobile home owner's policy would provide automobile liability coverage persuasive in the resolution of the instant case.

In *Herzog v. National American Ins. Co.,* 2 Cal.3d 192, 84 Cal.Rptr. 705, 465 P.2d 841 (1970), the second case cited by Defendant for its proposition that UM/UIM motorist coverage not be applied to a mobile home owner's policy, the California court determined that a homeowner's policy that provided certain incidental liability coverage for automobile-related accidents did not transform the homeowner's policy into a motor vehicle policy subject to certain statutory provisions. The California court reasoned that to so transform the policy would exceed the reasonable expectations and the intent of the parties.

Like *Davidson, Herzog* is distinguishable from the case at bar; *Herzog* is not an uninsured motorist case. Furthermore, the *Herzog* Court was able to confidently determine the parties' "reasonable expectations" because the California Insurance Code expressly exempted homeowners' and other personal liability insurance policies from the scope of both the California financial responsibility act and the uninsured motorist statute. Cal. Ins.Code §§ 11580.1(e), 11580.2(a)(1)(West 2000). Section 11580.1(e), for example, exempts broad classifications of insurance from the financial responsibility act:

> Nothing in this section or in Section 16054 or 16450 of the Vehicle Code shall be construed to constitute a homeowner's policy, personal and residence liability policy, personal and family liability policy, general liability policy, comprehensive personal liability policy, manufacturers' and contractors' policy, premises liability policy, special multiperil policy, or any policy or endorsement where automobile liability coverage is offered as incidental to some other basic coverage as an "automobile liability policy" within the meaning of Section 16450 of the Vehicle Code.

*Id.* at § 11580.1(e). However, *Herzog* nevertheless provides some guidance to the Court, in that it also highlights the importance of the expectations of the parties. While California statute clarified what the parties could reasonably believe in *Herzog,* this Court is not persuaded that the parties to the instant case could have believed that the mobile home owner's policy in

question was in fact subject to the mandate of an automobile insurance policy.

Finally, Defendants cite *Sidelnik v. American States Ins. Co.*, 914 S.W.2d 689 (Tex.App.1996). In *Sidelnik* the court considered a question not totally dissimilar from the question before this Court: is an insurance policy that covers automobiles in some form an "automobile insurance policy" for the purpose of applying a mandatory UM/UIM insurance liability offer? The court answered "no," holding that the Texas Insurance Code does not mandate that an umbrella policy provide UM/UIM coverage because the umbrella policy did not qualify as "automobile liability insurance."

As articulated in *Sidelnik*, the purpose behind the UM/UIM liability coverage is to protect responsible, insured motorists from those without insurance. The *Sidelnik* court placed great weight on the nature of umbrella policies as "extra" policies providing coverage above that provided by primary policies. The court noted that umbrella policies cannot exist without primary policies in place. The court further noted that the Texas UM/UIM statute was written to mandate only the statutory minimum of liability coverage. Since this minimum must by law be met in an insurer's primary policy, there is no reason to apply the mandate to umbrella polices, which are by their very nature "extra" policies added on top of primary policies to provide liability coverage in excess of the minimum liability requirements mandated by the Texas Insurance Code. *Sidelnik* at 694, *citing Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109, 859 P.2d 732 (Ariz.1993).

In the Court's February 8, 2001 Order denying Defendant's motions to dismiss and transfer, the Court stated that *Sidelnik* did not apply to this case. At the time, the Court was not aware that Plaintiff had a primary automobile insurance policy and therefore assumed that the Policy at issue was the only coverage available

to the Partons. For this reason, the Court distinguished *Sidelnik's* umbrella policy holding from the facts at issue in the instant case. In subsequent submissions, however, the parties demonstrated to the Court that the Partons were covered by a primary automobile insurance policy. (*See* Stip. of Fact, Dkt. No. 21, ¶¶ 4–5.)

Based on these clarifications, the Court finds that there is substantial similarity between *Sidelnik* and the instant case; neither the Policy at issue in this case nor the umbrella policy considered in *Sidelnik* comprised the primary source of liability coverage for the insured parties. The Court further notes that in *Sidelnik*, a Texas appellate court considered the same statute at issue in the instant case and determined that UM/UIM and PIP coverage are not mandated in all circumstances. The Court therefore finds that *Sidelnik* supports the Court's conclusion that the Policy should not be subject to the mandatory offer of UM/UIM and PIP coverage otherwise offered on automobile insurance policies.

■ In addition to the three cases cited by Defendant, the Court has examined Texas case law applying the "absurd results" principle. Judge Woodfin Jones of the Texas Court of Appeals, Third District published a law review article examining this very topic. J. Woodfin Jones, *"The Absurd–Results Principle of Statutory Construction in Texas,"* 15 U. Tex. L.R. 81 (1996). Judge Jones divided cases urging rejection of a construction of a statute based on the absurdity or unreasonableness of the results into four categories:

(1) the "conditional statement," i.e., one stating that an interpretation producing absurd results should not be adopted if an alternative construction is available; (2) the "normative" statement, i.e., one stating that courts should, may, must, or will not adopt a construction of a statute

that leads to absurd results, without making the exception conditional on the existence of a reasonable alternative construction and without expressly declaring that the rule will control even over the literal meaning of statutory language; (3) the "presumptive" statement, i.e., one stating that courts will presume the legislature did not intend for a statute to produce absurd results; and (4) the "deviatory" statement, i.e., one expressly stating that the court will deviate from the literal meaning of statutory language if an adoption of such meaning would produce absurd results.

*Id.* at 86. After reviewing Judge Jones' thorough study of the absurd results principle, the Court concludes that while there is a clear danger in departing from the law as stated by the Legislature, the Texas Supreme Court has held that "a court may consider the consequences that may flow from a particular construction, presuming that a just and reasonable result is intended and that the public interest is to be favored over any private interest." *Harris County District Attorney's Office v. J.T.S.*, 807 S.W.2d 572 (Texas 1991). In considering the ramifications of a determination that all homeowners' policies insuring an automobile in some manner, no matter how indirectly or under what circumstances, are subject to the mandatory offer of UM/UIM and PIP coverage, the Court determines that the Legislature did not intend that its UM/UIM and PIP mandate should cast so wide a net. To determine otherwise would be to permit a bloodless literalism to obscure the Legislature's intent.

## VIII

### Conclusion

The Court is aware that in finding for Defendant, it is overriding the plain meaning of the statute in order to forestall what it perceives as an absurd result. The Court is further aware that in so doing, it risks overstepping its judicial mandate to apply the law as dictated by the Legislature. The Court takes this risk because it is convinced that an application of the law as written by the Legislature and interpreted by Plaintiff cannot have been the intent of the Legislature, based on the absurdity of the result. For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for partial summary judgment (Dkt. No. 19) is DENIED and Defendant's motion for summary judgment (Dkt. No. 23) is GRANTED.