TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00374-CV






Eldon Dale Box and Teresa Irene Box, Appellants



v.



Jackson Barton Hopper as Testamentary Trustee under the Will of Ira Hopper and


as Independent Executor of and Testamentary Trustee under the


Will of Margery Dale Hopper, Deceased, Appellee (1)







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 20,251, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING








 Appellants Eldon Dale Box and Teresa Irene Box (the "Boxes") appeal a district-court
judgment granting title to and possession of the Hopper Ranch in Burnet County to appellee Jackson
Barton Hopper. The Boxes appeal by five issues. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 The events leading to this dispute began in September 1992 when the Boxes
approached Hopper and requested to lease his ranch. (2) Hopper leased the approximately 4900-acre
ranch to the Boxes pursuant to an oral agreement. The Boxes moved trailer houses onto the
property (3) and began a ranching operation. They performed routine maintenance and upkeep of
fences and pastures on the ranch. They erected a barn, portable horse arenas, and portable cattle
pens. In order to supply their trailers and ranching operation with water, the Boxes installed a water
pump and above-ground piping running to their dwelling from an artesian well about a mile away.

 In July 1997, the Boxes persuaded Hopper to reduce the oral lease agreement to
writing. Terry Box typed the agreement, (4) which provides in pertinent part, "Eldon [and] Terry Box
will remain on the ranch as long as Jack Hopper is alive" and "Eldon [and] Terry Box can remain
in home located at the Pecan Grove whether they lease the ranch or not." (5) It further gives the Boxes
a right of first refusal to purchase the ranch "if and/or when a sale may occur." The agreement was
not signed by and makes no reference to Hopper's mother, who owned an interest in the ranch.

 In September 1998, the agreement was supplemented by a letter agreement that
established a five-year lease term. The letter agreement provided, inter alia, that the Boxes would
make a donation of $3500 to the "Love Center" (6) in Lampasas, and that "wood cutting/tree removal,
etc. will not be permitted as Box party will have exclusive rights on the property so as to not interfere
with the hunting and ranching operation." The letter agreement purports to be between "Dale
Hopper, Hopper Ranch, Jack Hopper, agent" and the Boxes. On the Hopper side, it is signed by
"Jack Hopper, Agent."

 Both agreements are typed on the Boxes' letterhead. Both provide for the Boxes to
pay Hopper annual lease payments of $49,000, payable $18,500 on September 1 and October 15 and
$12,000 on March 15.

 Initially, the relationship between the Boxes and Hopper was friendly and mutually
beneficial. It was evident that they shared a love for the ranch. Hopper regarded the ranch as an
"earthly paradise" and had on several occasions told the Boxes that he wanted them to be able to
raise their children "in heaven on earth." But the parties' relationship began to deteriorate. Hopper
testified that the Boxes were consistently late with their lease payments. The Boxes were not making
their payments to the Love Center. Hopper began cutting wood on the property and donating the
proceeds to the Love Center in lieu of the donation that the Boxes had agreed to make. Additionally,
the Boxes sublet a portion of the ranch for hunting without informing Hopper. Finally, in 1999,
Hopper notified the Boxes that he was terminating the lease. The Boxes asked Hopper to reinstate
the lease, and he refused. Hopper then offered to rent the land immediately surrounding the trailer
houses to the Boxes. They, however, refused to discuss renting the property and refused to leave the
property.

 In March 2000, Hopper filed a "Petition for Forcible Detainer" in the justice court,
asserting that the 1998 letter agreement was a lease that had been breached by the Boxes' failure to
pay rent and seeking "restitution" of the ranch. On March 31 the justice court awarded possession
of the ranch to Hopper "with exclusion of approximately 150 acres located at the Pecan Grove." (7)

 On April 5 the Boxes filed a petition in bankruptcy. See 11 U.S.C.A. §§ 301, 701-84
(West 1993 & Supp. 2002). The bankruptcy court lifted the automatic stay of proceedings, see 11
U.S.C.A. § 362 (West Supp. 2002), enabling Hopper to bring this suit in state district court to quiet
title to the ranch. In re Box, No. 00-51426K (Bankr. W.D. Tex. July 10, 2000) (order granting relief
from stay). The bankruptcy court's order allowed Hopper to enforce the justice court's forcible-detainer judgment, "including execution and service of a Writ of Possession." Id. The order also
authorized Hopper "to file a trespass to [try] title or similar suit with regard to the 150-acre tract
excluded from the forcible detainer Judgment." Id.

 During the pendency of the forcible-detainer action, on March 27, 2000, the Boxes
filed a document entitled "Designation of Homestead" in the public records of Burnet County. The
document contains a less than clear "legal description" that appears to describe the entire ranch, but
seems to limit the claim of a rural homestead to 200 acres. See Tex. Prop. Code Ann. § 41.002(b)
(West 2000). After the justice court's judgment and the filing of their bankruptcy petition, the
Boxes, on June 5, 2000, refiled the designation with an attached legal description apparently
claiming a rural homestead of 194.607 acres comprised of the Pecan Grove. In the bankruptcy court,
the Boxes described the ranch in their real-property assets as "4700 [+]/- acres . . . leasehold" and
"life estate in 200 acres of land plus improvements." The bankruptcy court later allowed the
bankruptcy trustee to "abandon any recovery of [the Boxes] pertaining to [the Boxes]' allegation of
an entitlement to a homestead up to 200 acres as set forth" in the cause now before this Court. Box
(Feb. 23, 2001) (order noticing abandonment of property). In the state district court, the Boxes
claimed that the 1997 and 1998 agreements conveyed a life estate to them that "is their homestead
and consists of 194.607 acres" as described in their June 5 designation. They requested "that the
cloud on the title to their life estate asserted by Hopper be removed."

 Hopper asked the district court to award him "title to and possession of the [ranch]"
and to declare that the Boxes "have no right, title or interest in the [r]anch or any portion thereof."

 The district court tried the case to a jury, which found that the parties intended the
1997 agreement to grant the Boxes "a life estate in home [sic] at the Pecan Grove until the death of
. . . Hopper" and that the life estate was to contain five acres. However, the jury also found that the
grant of the life estate was "conditioned upon payment of rental by the Boxes" and "dependent upon
the Box[e]s' not defaulting under the terms of their lease of the ranch." The jury determined that the
Boxes had not provided Hopper "consideration for the grant of a life estate . . . in the home located
at the [P]ecan [G]rove." Consistent with the jury's findings, the district court rendered judgment that
"[Hopper] should recover title to and possession of the . . . ranch from [the Boxes], and that the
[Boxes]' life estate lapsed with the defaulting by [the Boxes] on the lease agreement."

 The Boxes appeal the judgment of the district court by five issues, contending that
the district court erred by (1) inserting a condition subsequent of defeasance into an unambiguous
agreement conferring a life estate; (2) denying the Boxes' designation of a 194-acre rural homestead
on the ranch; (3) refusing to award the Boxes a fee simple interest in the 194-acre homestead or,
alternatively, in a five-acre homestead; (4) denying the unambiguous grant of a right of first refusal
and option to purchase the ranch; and (5) failing to grant a writ of injunction to protect the peaceful
use and enjoyment of the Boxes' homestead.


DISCUSSION


 By their first issue, the Boxes contend that the 1997 and 1998 agreements were
unambiguous as a matter of law, that they created a life estate, and that the district court erred by
inserting a condition subsequent of defeasance upon default. "When the controversy is over
construction of an unambiguous written instrument, the construction is a matter of law for the trial
court." Phillips v. Union Bankers Ins. Co., 812 S.W.2d 616, 617 (Tex. App.--Dallas 1991, no writ)
(emphasis added); see also National Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517, 520 (Tex.
1995); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (holding that if contract can be given
certain or definite meaning, it is not ambiguous and will be construed as matter of law). However,
the Boxes assert that the agreements were unambiguous for the first time before this Court. The
Boxes never asked the district court to construe the agreements as a matter of law. The jury
considered four days of testimony concerning the relationship between the Boxes and Hopper, the
events surrounding the signing of the first written agreement in 1997 and the 1998 letter agreement,
and what each party thought the agreements meant before, during, and after the signing of the
agreements. "Only where a contract is first determined to be ambiguous may the court consider the
parties' interpretation and admit extraneous evidence to determine the true meaning of the
instrument." Sidelnik v. American States Ins. Co., 914 S.W.2d 689, 691 (Tex. App.--Austin 1996,
writ denied) (citing Sun Oil Co. v. Madely, 626 S.W.2d 726, 732 (Tex. 1981)). A review of the
record reveals not only that the Boxes did not object to the parol evidence admitted at trial, but that
they also introduced parol evidence to support their interpretation of the agreements. Parol evidence
is admitted for the purpose of construing ambiguous agreements. See Murphy v. Dilworth, 151
S.W.2d 1004, 1005 (Tex. 1941) (holding that ordinarily, where terms of written contract are plain
and unambiguous, parol evidence is inadmissible to vary terms or to show construction placed
thereon by parties at time or subsequent to making); Texas Utils. Elec. Co. v. City of Waco, 919
S.W.2d 436, 439 (Tex. App.--Waco 1995, writ denied) (holding that parol evidence is not
admissible to explain meaning of unambiguous contract).

 It is clear that the district court and the parties treated the agreements as ambiguous
throughout the trial, leading this Court to consider whether the issue was tried by implied consent. 
See Tex. R. Civ. P. 67. Rule 67 permits an unpleaded issue to be treated as raised in the pleadings
when it is tried by express or implied consent. Ranger Ins. Co. v. Robertson, 707 S.W.2d 135, 142
(Tex. App.--Austin 1986, writ ref'd n.r.e.). Trial by consent is only intended to apply in the
exceptional case where it clearly appears from the record as a whole that the parties tried the
unpleaded issue. Id. Rule 67 is not intended to establish a general rule of practice and should be
applied with care and not in doubtful cases. Id. (citing Jay Fikes & Assocs. v. Walton, 578 S.W.2d
885, 889 (Tex. Civ. App.--Amarillo 1979, writ ref'd n.r.e.); Foxworth-Galbraith Lumber Co. v.
Southwestern Contracting Corp., 165 S.W.2d 221, 224 (Tex. Civ. App.--Fort Worth 1942, writ
ref'd w.o.m.)).

 The Boxes deny that the issue of ambiguity was tried by consent. However, 


[i]mplied consent is shown when the evidence upon the extrinsic issue is developed
under circumstances making clear that the parties understood such issue was in the
case, and without either party having urged the pleading defect by obtaining a ruling
on an objection to the evidence, a motion for instructed verdict, an objection to the
charge, or other appropriate complaint, within the time allowed by the rules.



Yarbrough v. Cooper, 559 S.W.2d 917, 920 (Tex. Civ. App.--Houston [14th Dist.] 1977, writ ref'd
n.r.e.) (citing 2 Roy W. McDonald, Texas Civil Practice § 5.18 (rev. ed. 1970) (citations omitted)). 
The Boxes presented parol evidence to the jury. Five of the fifteen questions submitted to the jury
asked them to interpret the meaning of various provisions of the agreements. (8) The Boxes did not
object to this manner of submission or move for a directed verdict or a judgment notwithstanding
the verdict. In a motion for new trial, the Boxes did not assert that the agreements were
unambiguous, but instead argued that the jury's findings conflicted with one another and that there
was no evidence or insufficient evidence to support the findings. During the trial, the arguments and
issues presented before the judge and jury indicated that there was a dispute over the intent of the
parties upon entering into this agreement. Nowhere, except in their appellate brief, have the Boxes
argued that the 1997 and 1998 agreements were unambiguous. Upon reviewing the record as a
whole, we determine that the issue of ambiguity was tried by consent. The Boxes may not raise an
argument before this Court contrary to their argument before the district court. See Tex. R. App. P.
33.1. Issue one is overruled.

 By issues two and three, the Boxes claim that the district court erred in denying their
designation of a 194-acre homestead or, in the alternative, that the court erred in not awarding them
a fee-simple interest in 194 acres or in at least the five acres that the jury found was granted as a life
estate in the agreements. They base their argument on the contention that the 1997 and 1998
agreements were unambiguous and that "the extent of the life estate is to be determined by the court
based on the intent of the parties contained within the four corners of the . . . agreements." We have
held that the Boxes may not now assert that the agreements were unambiguous. The Boxes'
contention that they are entitled to a fee-simple interest in any portion of the ranch is wholly without
merit as it was not pleaded or argued at trial and is not supported by argument or authority here. See
Tex. R. App. P. 38.1(h). We overrule issues two and three. 

 By issue four, the Boxes assert that the district court erred in denying the
unambiguous grant of the right of first refusal and option to purchase the Hopper ranch. The Boxes
present neither argument nor authority to support their contention. See id. They do no more than
reference their arguments under the first three issues, which we have held to be without merit. Issue
four is overruled.

 By their fifth issue, the Boxes argue that the district court erred in failing to grant a
writ of injunction to protect the peaceful use and enjoyment of their homestead. Because the district
court awarded full title to and possession of the property to Hopper, the Boxes' are not entitled to
the peaceful use and enjoyment of the property. We overrule issue five.


CONCLUSION


 Having overruled all of the Boxes' issues, we affirm the judgment of the district
court.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: August 30, 2002

Do Not Publish
1. Hopper also filed a notice of appeal. He then filed a motion for leave to address his issues in
his appellee's brief, in lieu of filing a separate brief, which we granted. However, he raises no issues
in his appellee's brief. Therefore, we treat only the Boxes as appellants.
2. In 1992 Hopper held an undivided one-half interest in the ranch as trustee under his father's
will. His mother, who died in 1999, held the other undivided one-half interest.
3. Over the span of several years, the entire Box family, including Mr. Box's mother-in-law and
a foreign exchange student, moved onto the ranch. The Boxes had a total of six trailer houses on the
ranch. One was the Boxes' home, one was Mr. Box's mother-in-law's home, one was used as an
office. Two of the trailers were unoccupied at a separate location from the others and had been used
as a camp by hunters. 
4. "Terry" is appellant Teresa Irene Box's nickname.
5. At trial the parties referred to the "Pecan Grove" as the area where the Boxes lived. However, 
the location and size of the Pecan Grove was not defined in the 1997 and 1998 agreements. Despite
conflicting testimony at trial, the jury ultimately found that the Pecan Grove consisted of five acres. 
However, the jury was not asked to establish the Pecan Grove's location.
6. Hopper testified that the "Love Center" is a nonprofit Christian ministry organized for the
purpose of "sharing Jesus and helping people."
7. Justice courts may not adjudicate title to real property. Tex. R. Civ. P. 746 ("[T]he only issue
shall be as to the right to actual possession; and the merits of the title shall not be adjudicated."). 
Therefore, the justice court had no authority to determine ownership of the disputed 150 acres.
8. The Boxes did object to and obtain an adverse ruling with regard to question 5 of the jury
charge, which asked: "was the grant of a life estate by Jackson Barton Hopper dependent upon the
Box[e]s not defaulting under the terms of their lease of the ranch?" The Boxes argued that the
question was not supported by the pleadings and that the issue was not tried by implied consent. 
However, the broader issue of whether the agreements are unambiguous is what the Boxes raise
before this Court. The Boxes did not object to the first four questions which asked,


Question No. 1


 Was it the intent of each party to the instrument dated July 3, 1997, that Eldon Dale
Box and Teresa Irene Box would have a life estate to live in home at the Pecan Grove
until the death of Jackson Barton Hopper?


Question No. 2


 What is the quantity of land, located at the pecan grove, contempleted [sic] by the
parties to the instrument signed July 3, 1997, that the Boxes would have in order to use
and enjoy their life estate?


Question No. 3


 Was the grant of a life estate by Jackson Barton Hopper, if any, conditioned upon
payment of rental by the Boxes?

Question No. 4


 Did Eldon Dale Box and Teresa Irene Box provide Jackson Barton Hopper
consideration for the grant of a life estate, if any, in the home located at the pecan grove?