# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00374-CV

**Eldon Dale Box and Teresa Irene Box, Appellants**

**v.**

**Jackson Barton Hopper as Testamentary Trustee under the Will of Ira Hopper and
as Independent Executor of and Testamentary Trustee under the
Will of Margery Dale Hopper, Deceased, Appellee[1]**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 20,251, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING

Appellants Eldon Dale Box and Teresa Irene Box (the ABoxes@) appeal a district-court judgment granting title to and possession of the Hopper Ranch in Burnet County to appellee Jackson Barton Hopper. The Boxes appeal by five issues. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Hopper also filed a notice of appeal. He then filed a motion for leave to address his issues in his appellee=s brief, in lieu of filing a separate brief, which we granted. However, he raises no issues in his appellee=s brief. Therefore, we treat only the Boxes as appellants.

The events leading to this dispute began in September 1992 when the Boxes approached Hopper and requested to lease his ranch.[2] Hopper leased the approximately 4900-acre ranch to the Boxes pursuant to an oral agreement. The Boxes moved trailer houses onto the property[3] and began a ranching operation. They performed routine maintenance and upkeep of fences and pastures on the ranch. They erected a barn, portable horse arenas, and portable cattle pens. In order to supply their trailers and ranching operation with water, the Boxes installed a water pump and above-ground piping running to their dwelling from an artesian well about a mile away.

---

[2] In 1992 Hopper held an undivided one-half interest in the ranch as trustee under his father=s will. His mother, who died in 1999, held the other undivided one-half interest.

[3] Over the span of several years, the entire Box family, including Mr. Box=s mother-in-law and a foreign exchange student, moved onto the ranch. The Boxes had a total of six trailer houses on the ranch. One was the Boxes= home, one was Mr. Box=s mother-in-law=s home, one was used as an office. Two of the trailers were unoccupied at a separate location from the others and had been used as a camp by hunters.

In July 1997, the Boxes persuaded Hopper to reduce the oral lease agreement to writing. Terry Box typed the agreement,[4] which provides in pertinent part, AEldon [and] Terry Box will remain on the ranch as long as Jack Hopper is alive@ and AEldon [and] Terry Box can remain in home located at the Pecan Grove whether they lease the ranch or not.@[5] It further gives the Boxes a right of first refusal to purchase the ranch Aif and/or when a sale may occur.@ The agreement was not signed by and makes no reference to Hopper=s mother, who owned an interest in the ranch.

---

[4] ATerry@ is appellant Teresa Irene Box=s nickname.

[5] At trial the parties referred to the APecan Grove@ as the area where the Boxes lived. However, the location and size of the Pecan Grove was not defined in the 1997 and 1998 agreements. Despite conflicting testimony at trial, the jury ultimately found that the Pecan Grove consisted of five acres. However, the jury was not asked to establish the Pecan Grove=s location.

In September 1998, the agreement was supplemented by a letter agreement that established a five-year lease term. The letter agreement provided, *inter alia*, that the Boxes would make a donation of $3500 to the ALove Center@[6] in Lampasas, and that Awood cutting/tree removal, etc. will not be permitted as Box party will have exclusive rights on the property so as to not interfere with the hunting and ranching operation.@ The letter agreement purports to be between ADale Hopper, Hopper Ranch, Jack Hopper, agent@ and the Boxes. On the Hopper side, it is signed by AJack Hopper, Agent.@

Both agreements are typed on the Boxes= letterhead. Both provide for the Boxes to pay Hopper annual lease payments of $49,000, payable $18,500 on September 1 and October 15 and $12,000 on March 15.

Initially, the relationship between the Boxes and Hopper was friendly and mutually beneficial. It was evident that they shared a love for the ranch. Hopper regarded the ranch as an Aearthly paradise@ and had on several occasions told the Boxes that he wanted them to be able to raise their children Ain heaven on earth.@ But the parties= relationship began to deteriorate. Hopper testified that the Boxes were consistently late with their lease payments. The Boxes were not making their payments to the Love Center. Hopper began cutting wood on the property and donating the proceeds to the Love Center in lieu of the donation that the Boxes had agreed to make. Additionally, the Boxes sublet a portion of the ranch for hunting without informing Hopper. Finally, in 1999, Hopper notified the Boxes that he was terminating the lease. The Boxes asked Hopper to reinstate the lease, and he refused. Hopper then offered to rent the

---

[6] Hopper testified that the ALove Center@ is a nonprofit Christian ministry organized for the purpose of Asharing Jesus and helping people.@

**4**

land immediately surrounding the trailer houses to the Boxes. They, however, refused to discuss renting the property and refused to leave the property.

In March 2000, Hopper filed a APetition for Forcible Detainer@ in the justice court, asserting that the 1998 letter agreement was a lease that had been breached by the Boxes= failure to pay rent and seeking Arestitution@ of the ranch. On March 31 the justice court awarded possession of the ranch to Hopper Awith exclusion of approximately 150 acres located at the Pecan Grove.@[7]

On April 5 the Boxes filed a petition in bankruptcy. *See* 11 U.S.C.A. '' 301, 701-84 (West 1993 & Supp. 2002). The bankruptcy court lifted the automatic stay of proceedings, *see* 11 U.S.C.A. ' 362 (West Supp. 2002), enabling Hopper to bring this suit in state district court to quiet title to the ranch. *In re Box*, No. 00-51426K (Bankr. W.D. Tex. July 10, 2000) (order granting relief from stay). The bankruptcy court=s order allowed Hopper to enforce the justice court=s forcible-detainer judgment, Aincluding execution and service of a Writ of Possession.@ *Id.* The order also authorized Hopper Ato file a trespass to [try] title or similar suit with regard to the 150-acre tract excluded from the forcible detainer Judgment.@ *Id.*

During the pendency of the forcible-detainer action, on March 27, 2000, the Boxes filed a document entitled ADesignation of Homestead@ in the public records of Burnet County. The document

---

[7] Justice courts may not adjudicate title to real property. Tex. R. Civ. P. 746 (A[T]he only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated.@). Therefore, the justice court had no authority to determine ownership of the disputed 150 acres.

contains a less than clear "legal description" that appears to describe the entire ranch, but seems to limit the claim of a rural homestead to 200 acres. *See* Tex. Prop. Code Ann. § 41.002(b) (West 2000). After the justice court's judgment and the filing of their bankruptcy petition, the Boxes, on June 5, 2000, refiled the designation with an attached legal description apparently claiming a rural homestead of 194.607 acres comprised of the Pecan Grove. In the bankruptcy court, the Boxes described the ranch in their real-property assets as "4700 [+]/- acres . . . leasehold" and "life estate in 200 acres of land plus improvements." The bankruptcy court later allowed the bankruptcy trustee to "abandon any recovery of [the Boxes] pertaining to [the Boxes]' allegation of an entitlement to a homestead up to 200 acres as set forth" in the cause now before this Court. *Box* (Feb. 23, 2001) (order noticing abandonment of property). In the state district court, the Boxes claimed that the 1997 and 1998 agreements conveyed a life estate to them that "is their homestead and consists of 194.607 acres" as described in their June 5 designation. They requested "that the cloud on the title to their life estate asserted by Hopper be removed."

Hopper asked the district court to award him "title to and possession of the [ranch]" and to declare that the Boxes "have no right, title or interest in the [r]anch or any portion thereof."

The district court tried the case to a jury, which found that the parties intended the 1997 agreement to grant the Boxes "a life estate in home [sic] at the Pecan Grove until the death of . . . Hopper" and that the life estate was to contain five acres. However, the jury also found that the grant of the life estate was "conditioned upon payment of rental by the Boxes" and "dependent upon the Box[e]s' not defaulting under the terms of their lease of the ranch." The jury determined that the Boxes had not provided Hopper "consideration for the grant of a life estate . . . in the home located at the [P]ecan [G]rove."

**6**

Consistent with the jury=s findings, the district court rendered judgment that A[Hopper] should recover title to and possession of the . . . ranch from [the Boxes], and that the [Boxes]= life estate lapsed with the defaulting by [the Boxes] on the lease agreement.@

The Boxes appeal the judgment of the district court by five issues, contending that the district court erred by (1) inserting a condition subsequent of defeasance into an unambiguous agreement conferring a life estate; (2) denying the Boxes= designation of a 194-acre rural homestead on the ranch; (3) refusing to award the Boxes a fee simple interest in the 194-acre homestead or, alternatively, in a five-acre homestead; (4) denying the unambiguous grant of a right of first refusal and option to purchase the ranch; and (5) failing to grant a writ of injunction to protect the peaceful use and enjoyment of the Boxes= homestead.

**DISCUSSION**

By their first issue, the Boxes contend that the 1997 and 1998 agreements were unambiguous as a matter of law, that they created a life estate, and that the district court erred by inserting a condition subsequent of defeasance upon default. AWhen the controversy is over construction of an *unambiguous* written instrument, the construction is a matter of law for the trial court.@ *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 617 (Tex. App.CDallas 1991, no writ) (emphasis added); *see also National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (holding that if contract can be given certain or definite meaning, it is not ambiguous and will be construed as matter of law). However, the Boxes assert that the agreements were unambiguous for the first time before this Court. The Boxes never asked the district court to construe the agreements as a matter of law. The jury considered four days of testimony concerning the relationship between the Boxes and Hopper, the events surrounding the signing of the first written agreement in 1997 and the 1998 letter agreement, and what each party thought the agreements meant before, during, and after the signing of the agreements. AOnly where a contract is first determined to be ambiguous may the court consider the parties= interpretation and admit extraneous evidence to determine the true meaning of the instrument.@ *Sidelnik v. American States Ins. Co.*, 914 S.W.2d 689, 691 (Tex. App.CAustin 1996, writ denied) (citing *Sun Oil Co. v. Madely*, 626 S.W.2d 726, 732 (Tex. 1981)). A review of the record reveals not only that the Boxes *did not object* to the parol evidence admitted at trial, but that they also *introduced* parol evidence to support their interpretation of the agreements. Parol evidence is admitted for the purpose of construing *ambiguous* agreements. *See Murphy v. Dilworth*, 151 S.W.2d 1004, 1005 (Tex. 1941) (holding that ordinarily, where terms of written contract are plain and unambiguous, parol

**8**

evidence is inadmissible to vary terms or to show construction placed thereon by parties at time or subsequent to making); *Texas Utils. Elec. Co. v. City of Waco*, 919 S.W.2d 436, 439 (Tex. App.CWaco 1995, writ denied) (holding that parol evidence is not admissible to explain meaning of unambiguous contract).

It is clear that the district court and the parties treated the agreements as ambiguous throughout the trial, leading this Court to consider whether the issue was tried by implied consent. *See* Tex. R. Civ. P. 67. Rule 67 permits an unpleaded issue to be treated as raised in the pleadings when it is tried by express or implied consent. *Ranger Ins. Co. v. Robertson*, 707 S.W.2d 135, 142 (Tex. App.CAustin 1986, writ ref=d n.r.e.). Trial by consent is only intended to apply in the exceptional case where it clearly appears from the record as a whole that the parties tried the unpleaded issue. *Id.* Rule 67 is not intended to establish a general rule of practice and should be applied with care and not in doubtful cases. *Id. (*citing *Jay Fikes & Assocs. v. Walton*, 578 S.W.2d 885, 889 (Tex. Civ. App.CAmarillo 1979, writ ref=d n.r.e.); *Foxworth-Galbraith Lumber Co. v. Southwestern Contracting Corp.*, 165 S.W.2d 221, 224 (Tex. Civ. App.CFort Worth 1942, writ ref=d w.o.m.)).

The Boxes deny that the issue of ambiguity was tried by consent. However,

> [i]mplied consent is shown when the evidence upon the extrinsic issue is developed under circumstances making clear that the parties understood such issue was in the case, and without either party having urged the pleading defect by obtaining a ruling on an objection to the evidence, a motion for instructed verdict, an objection to the charge, or other appropriate complaint, within the time allowed by the rules.

**9**

*Yarbrough v. Cooper*, 559 S.W.2d 917, 920 (Tex. Civ. App.CHouston [14th Dist.] 1977, writ ref=d

n.r.e.) (citing 2 Roy W. McDonald, *Texas Civil Practice* ' 5.18 (rev. ed. 1970) (citations omitted)). The

Boxes presented parol evidence to the jury. Five of the fifteen questions submitted to the jury asked them

to interpret the meaning of various provisions of the agreements.[8] The Boxes did not object to this manner

of submission or move for a directed verdict or a judgment notwithstanding the verdict. In a motion for new

trial, the Boxes did not assert that the agreements were unambiguous, but instead argued that the jury=s

---

[8] The Boxes did object to and obtain an adverse ruling with regard to question 5 of the jury charge, which asked: Awas the grant of a life estate by Jackson Barton Hopper dependent upon the Box[e]s not defaulting under the terms of their lease of the ranch?@ The Boxes argued that the question was not supported by the pleadings and that the issue was not tried by implied consent. However, the broader issue of whether the agreements are unambiguous is what the Boxes raise before this Court. The Boxes did not object to the first four questions which asked,

Question No. 1

Was it the intent of each party to the instrument dated July 3, 1997, that Eldon Dale Box and Teresa Irene Box would have a life estate to live in home at the Pecan Grove until the death of Jackson Barton Hopper?

Question No. 2

What is the quantity of land, located at the pecan grove, contemplated [sic] by the parties to the instrument signed July 3, 1997, that the Boxes would have in order to use and enjoy their life estate?

Question No. 3

Was the grant of a life estate by Jackson Barton Hopper, if any, conditioned upon payment of rental by the Boxes?
Question No. 4

Did Eldon Dale Box and Teresa Irene Box provide Jackson Barton Hopper consideration for the grant of a life estate, if any, in the home located at the pecan grove?

findings conflicted with one another and that there was no evidence or insufficient evidence to support the findings. During the trial, the arguments and issues presented before the judge and jury indicated that there was a dispute over the intent of the parties upon entering into this agreement. Nowhere, except in their appellate brief, have the Boxes argued that the 1997 and 1998 agreements were unambiguous. Upon reviewing the record as a whole, we determine that the issue of ambiguity was tried by consent. The Boxes may not raise an argument before this Court contrary to their argument before the district court. *See* Tex. R. App. P. 33.1. Issue one is overruled.

By issues two and three, the Boxes claim that the district court erred in denying their designation of a 194-acre homestead or, in the alternative, that the court erred in not awarding them a fee-simple interest in 194 acres or in at least the five acres that the jury found was granted as a life estate in the agreements. They base their argument on the contention that the 1997 and 1998 agreements were unambiguous and that Athe extent of the life estate is to be determined by the court based on the intent of the parties contained within the four corners of the . . . agreements.@ We have held that the Boxes may not now assert that the agreements were unambiguous. The Boxes=contention that they are entitled to a fee-simple interest in any portion of the ranch is wholly without merit as it was not pleaded or argued at trial and is not supported by argument or authority here. *See* Tex. R. App. P. 38.1(h). We overrule issues two and three.

By issue four, the Boxes assert that the district court erred in denying the unambiguous grant of the right of first refusal and option to purchase the Hopper ranch. The Boxes present neither argument nor authority to support their contention. *See id.* They do no more than reference their arguments under the first three issues, which we have held to be without merit. Issue four is overruled.

**11**

By their fifth issue, the Boxes argue that the district court erred in failing to grant a writ of injunction to protect the peaceful use and enjoyment of their homestead. Because the district court awarded full title to and possession of the property to Hopper, the Boxes= are not entitled to the peaceful use and enjoyment of the property. We overrule issue five.

## CONCLUSION

Having overruled all of the Boxes= issues, we affirm the judgment of the district court.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   August 30, 2002

Do Not Publish

**12**